JS-6

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SUPRA NATIONAL EXPRESS, INC., | Case No. 2:24-cv-01593-SB-KS |
| Plaintiff, | |
| v. | ORDER REMANDING CASE FOR LACK OF SUBJECT MATTER JURISDICTION |
| PENSKE TRUCK LEASING CO., L.P. et al., | |
| Defendants. | |

    In this truck-leasing dispute, Plaintiff Supra National Express, Inc. filed this action in Los Angeles Superior Court against Defendants Penske Truck Leasing, Co., L.P., Christopher Wilson, and Junior Castro alleging claims for breach of contract, breach of the implied covenant of good faith and fair dealing, fraud, negligent interference with prospective economic benefit, and violations of California Business and Professions Code § 17200.  Dkt. No. 1-2.  Defendant Penske removed the case based on diversity jurisdiction under 28 U.S.C. § 1332(a).  Dkt. No. 1.  Because Supra National is a California citizen and Castro and Wilson are also California citizens, this Court lacks jurisdiction over the case so long as Castro and Wilson are in it.  *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996) (defining complete diversity under § 1332(a)).  In its notice of removal, Penske argued that the Court should ignore their citizenship for two reasons: Castro and Wilson were not yet served as allegedly required by the forum-defendant rule (which Penske later conceded does not apply here); and Castro and Wilson are "sham" defendants who were fraudulently joined to defeat removal. Dkt. No. 1 ¶¶ 16, 18–23.

    The Court ordered Penske to show cause why the case should not be remanded for lack of jurisdiction.  Dkt. No. 14.  Penske filed a response, arguing that Castro and Wilson were fraudulently joined and should be dismissed.  Dkt. No. 17.  Supra National filed a reply, arguing that Penske had not met its burden

1

under the controlling removal standard.  Dkt. No. 18.  The Court heard argument
on the order to show cause on March 29, 2024.  Dkt. No. 23.

When jurisdiction is premised on an allegation of a fraudulently joined
defendant, a district court must remand the case if there is "a possibility of
recovery" against that defendant.  *Grancare, LLC v. Thrower*, 889 F.3d 543, 550
(9th Cir. 2019).  This "possibility standard"—which requires the removing party to
show that the allegations against the nondiverse defendant are "wholly
insubstantial and frivolous"—is not equivalent to the motion-to-dismiss standard
under Fed. R. Civ. P. 12(b)(6).  *Id.* at 549–50.  On the contrary, a searching inquiry
into the merits of the case when screening for fraudulent joinder is improper.  *Id.* at
548–49.  The possibility standard, moreover, must consider whether the alleged
pleading defects are curable by amendment.  *Id.* at 550.  Thus, a removing party
asserting fraudulent joinder bears the "heavy burden" of showing that the claims
against a nondiverse defendant are frivolous as alleged and cannot possibly be
cured by amendment.   *Id.* at 548, 550.

Penske falls short of satisfying this demanding standard.  In fact, Penske
does not address the possibility standard articulated in *Grancare* and instead
submits a response to the show-cause order that reads like a motion to dismiss for
failure to state a claim.  The crux of Penske's fraudulent joinder argument is that
the tort claims asserted against Castro and Wilson should be treated as thinly
disguised versions of the contract claim asserted solely against Penske.  Dkt. No.
17 at 7.  Under this theory, Pennsylvania's "gist of the action" doctrine would bar
separate tort claims against these individual defendants.  In its removal papers,
Penske argued:

> The [contract] contains a choice of law provision which dictates
> that Pennsylvania law governs this action.  Pennsylvania's
> "Gist-of-the-Action" doctrine precludes plaintiffs from
> "recasting ordinary breach of contract claims into tort claims."
> *eToll, Inc. v. Elias/Savion Advertising, Inc*., 811 A.2d 10, 14
> (2002) (finding the "fraud at issue was not so tangential to the
> parties' relationship so as to make fraud the gist of the action").

Dkt. No. 1 ¶ 22.

Despite its invocation of Pennsylvania law, Penske relied on California's
"economic loss" rule in its response to the show-cause order, conclusorily asserting
in a footnote that this rule is functionally equivalent to the gist-of-the-action
doctrine.  Dkt. No. 17 at 7 & n.1.  Penske's reliance on California law without any

choice-of-law analysis—after asserting that Pennsylvania law applies—raises questions about whether it has carried its heavy burden, particularly when Penske has not shown that the applicable law in both states is materially identical.

The Pennsylvania Supreme Court has described the line between contract and tort actions as follows:

> [T]he substance of the allegations comprising a claim in a plaintiff's complaint are of paramount importance, and, thus, the mere labeling by the plaintiff of a claim as being in tort, e.g., for negligence, is not controlling. If the facts of a particular claim establish that the duty breached is one created by the parties by the terms of their contract—i.e., a specific promise to do something that a party would not ordinarily have been obligated to do but for the existence of the contract—then the claim is to be viewed as one for breach of contract. . . . If, however, the facts establish that the claim involves the defendant's violation of a broader social duty owed to all individuals, which is imposed by the law of torts and, hence, exists regardless of the contract, then it must be regarded as a tort.

*Bruno v. Erie Ins. Co.*, 630 Pa. 79, 112 (2014).

Penske has not demonstrated that Supra National's fraud claim against Castro and Wilson so plainly falls on the contractual side of the *Bruno* line that it should be deemed frivolous. The fraud claim in this case is based on a theory that Castro and Wilson fraudulently induced Supra National to contract with Penske. Dkt. No. 1-2 ¶¶ 51–59. Penske cites California law suggesting that such representations cannot form the basis of an independent fraud claim. Dkt. No. 17 at 7–9. But a case applying Pennsylvania law arguably would support a contrary conclusion:

> The nature of the duty [not to use misrepresentations to induce the plaintiff into purchasing an insurance policy] arises from a general societal duty to refrain from fraudulent representations and not a breach of a duty created by the insurance contract itself. We find the gist of the action doctrine does not bar the fraudulent inducement claim.

*Zaebst v. Progressive Advanced Insurance Company*, No. 23-cv-1732, 2023 WL 4273766 at *10, — F. Supp. 3d — (E.D. Pa. June 29, 2023). This is not to say that

Supra National's complaint necessarily can survive a motion to dismiss under Pennsylvania law. But the fraudulent-joinder standard is a far more difficult one for the removing party to satisfy. Penske must show that the fraud claim is frivolous as alleged and that Supra National cannot possibly state a claim even if given leave to amend. It has not done so.

In addition, the complaint asserts a claim for negligent interference with prospective economic benefit, alleging that when Penske, Castro, and Wilson terminated the trucking lease without notice, demanded return of the vehicles, and ceased providing maintenance and repair services, they failed to act with reasonable care and disrupted Supra National's relationships with its customers, including Anheuser Busch. Dkt. 1-2 ¶¶ 61–65. Penske has not shown that no court applying Pennsylvania law could possibly view the duty not to interfere with the Penske's business relationships as one deriving from Castro and Wilson's duties to society, independent of the contract. In its show-cause response and at the hearing, Penske failed to meaningfully address this cause of action, arguing only that it "pertain[s] to Penske's alleged breach and repudiation of its contract with Plaintiff." Dkt. No. 17 at 5. This conclusory assertion does not meet Penske's burden.

In short, Penske has not satisfied its heavy burden of establishing fraudulent joinder as required by *Grancare*. The case is REMANDED to the Los Angeles Superior Court forthwith.

Date: April 11, 2024

_____
Stanley Blumenfeld, Jr.
United States District Judge